UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

ROY PHILLIPS,                )
                             )
        Plaintiff,            )
                             )
v.                           )    Case No. 4:13CV1745 SNLJ
                             )
JAMES HURLEY, et al.,        )
                             )
        Defendant.            )

## MEMORANDUM AND ORDER

This matter is before the Court on the defendants' motion for summary judgment. The motion has been fully briefed and the matter is ripe for disposition. For the following reasons, the Court will grant the motion.

**I.    Background**

Plaintiff Roy Phillips, who was an inmate at the Northeast Correctional Center ("NECC")[1], filed this action pursuant to 42 U.S.C. §§ 1983 and 1985 against numerous Missouri Department of Corrections employees. This case has a complicated procedural history which, for the sake of brevity, is omitted in this memorandum. Remaining for disposition in this case are: Count I against defendants James Hurley, Tyree Butler, Kristin Cutt, and Larry Allen claims violations regarding plaintiff's placement and continuation in administrative segregation; Count II against defendant James Hurley

---

[1] In plaintiff's response to the motion, he stated he was transferred to Farmington Correctional Center (FCC) on November 13, 2015.

claims a failure to replace broken eyeglasses; and Count III against defendants James Hurley, Marsha Kiel, and Amber Grote claims interference with legal mail.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir.1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth affirmative evidence and specific facts by affidavit and other evidence showing that there is a genuine dispute of a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 324. In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). "Where parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine issue of material fact exists and whether the movant is entitled to judgment as a matter of law." *Allen v. Missouri*,

2

4:11CV2224 JAR, 2013 WL 2156259, at *3 (E.D. Mo. May 17, 2013) (citing *Husinga v. Federal–Mogul Ignition Co.,* 519 F.Supp.2d 929, 942 (S.D. Iowa 2007)).

### III.   The Parties' Statements of Fact

The Court has reviewed the statements, the responses, and the supporting documentation, and, where appropriate, will accept facts as supported by appropriate admissible evidence. In accordance with Local Rule 4.01 (E), all matters set forth in the movants' statement of facts are deemed admitted unless specifically controverted by the opposing party. Unless otherwise indicated, the facts set forth below are undisputed.

Plaintiff goes to great lengths to dispute the defendants' statement of facts and argue that those facts are irrelevant. Plaintiff relies primarily on his own deposition testimony and affidavit to dispute defendants' facts. Although there are a multitude of disputed facts, the material facts necessary to make the determination on the claims alleged are undisputed and/or are deemed admitted because they are not specifically controverted.

Facts for each of the remaining counts will be discussed below.

### IV.   Discussion

Defendants seek summary judgment on each of the remaining counts.

#### A.   Count I: placement and continuation in administrative segregation

Plaintiff has been incarcerated at Farmington Correctional Center (FCC) in Farmington, Missouri, and at Northeast Correctional Center (NECC) in Bowling Green, Missouri. Plaintiff transferred from FCC to NECC on June 5, 2012. Defendant Hurley was the Warden of NECC, defendant Butler was a Functional Unit Manager (FUM),

defendant Cutt was a Corrections Case Manager II (CCM II), and defendant Allen was a Corrections Officer III (CO III).  At the time of the alleged incidents, defendant Butler was assigned to the administrative segregation unit and served as the head of the administrative segregation committee.  Defendant Cutt was, at times, assigned to the administrative segregation unit and served on the administrative segregation committee.  Defendant Allen was, at times, assigned to the administrative segregation unit and served on the administrative segregation committee when he was not assigned to the administrative segregation unit.

     Housing Unit 1 is the administrative segregation unit at NECC.  If an offender is involved in a fight, the offender is generally placed in housing unit 1 under temporary administrative segregation confinement (TASC) that same day.  An offender may be placed in TASC based on the recommendation of a staff member and approval of a shift supervisor when: (1) a staff member witnesses the offender committing a serious wrongdoing; (2) an offender is a material witness to a major violation or criminal act which may require protective custody; (3) the offender is an immediate security risk; (4) the offender is violent, struggling, or creating sufficient disturbance to indicate the offender is violent, struggling, or creating a sufficient disturbance to indicate the offender is not in control of himself; (5) there is an urgent need to separate the offender from others for his own safety or the safety of others there is information from a reliable source that indicates one of those reasons apply; or (6) it is necessary to maintain the good order and security of the facility.

When an offender is assigned to TASC with a conduct violation, the conduct violation should generally be processed within seven days. However, if the conduct violation cannot be processed within seven working days due to extenuating circumstances, the administrative segregation committee will hold a classification hearing to determine whether to place the offender in administrative segregation or return the offender to general population.[2] If there is an investigation regarding a potential conduct violation by an offender, that offender is generally kept in administrative segregation until the investigation is completed.

The administrative segregation committee is made up of a Functional Unit Manager, Case Manager, and Lieutenant. After an offender's initial placement in administrative segregation, a hearing should be held by the administrative segregation committee within 30 days. After the first 30 day hearing, the administrative segregation committee must hold a hearing at least every 90 days to review an offender's placement in administrative segregation. The committee can choose to hold the hearing sooner, but does not have to. NECC's policies state that an offender is always given the opportunity to be present for each classification hearing, unless the offender is excluded from part of the hearing for institutional safety reasons. Plaintiff denies that he was given this opportunity. Further, NECC's policies provide the offender an opportunity to make a statement and to present evidence on his behalf at the classification hearing. Plaintiff denies that he was given this opportunity.

---

[2] Plaintiff admits this policy exists but denies that it is always applied.

Plaintiff alleges he was placed in administrative segregation as retaliation. Additionally, plaintiff alleges that his placement and continuation in administrative segregation was without due process and constituted cruel and unusual punishment. Subsequently, plaintiff focused on the alleged due process violations as opposed to the retaliation claim. Prior to plaintiff's affidavit in response to the motion for summary judgment --- in the first amended complaint, discovery responses, and his deposition --- plaintiff's claim has been that (1) he was placed in administrative segregation for no reason, (2) he was not told why he was placed in administrative segregation, (3) there were not proper hearings, (4) he was not allowed to be present for or offer testimony at the hearings that are documented in NECC's records, and (5) he was continued in administrative segregation for no reason. Plaintiff states that he later learned that NECC's reason for his placement and continuation in administrative segregation was pending an investigation as to a fight with his cell mate, that the investigation took only a few hours but was not done until more than three months after he was placed in administrative segregation, and thereafter he was continued in segregation for protective custody that he alleges he did not request.

Plaintiff alleges that he remained in administrative segregation for more than 120 days without being advised as to why he had been placed there. Plaintiff further alleges that the defendants' failure to follow current policy and procedure and the subsequent punishment of plaintiff under the guise of administrative segregation violated his rights to due process as well as the prohibition against cruel and unusual punishment.

6

"In order to prevail on a Fourteenth Amendment due process claim, [plaintiff] must first demonstrate that he was deprived of life, liberty, or property by government action." *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003). Determining whether plaintiff's confinement to administrative segregation was in violation of his due process rights involves a two-step inquiry. First, there must be a determination of whether a liberty interest was at stake. *Williams v. Hobbs*, 662 F.3d 994, 1000 (8th Cir. 2011). Second, the Court must determine what process is necessary to protect that interest. *Id.* (citing *Clark v. Brewer*, 776 F.2d 226, 232 (8th Cir.1985)).

The Supreme Court set out the test for determining liberty interests in a prison setting and held that the liberty protected by the due process clause "will be generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S.472, 484 (1995). "In this context, there is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips*, 320 F.3d at 847 (violations of the Department of Corrections' policies do not amount to violations of the due process clause) (citation omitted). "Rather, any liberty interest must be an interest in the nature of the prisoner's confinement, 'not an interest in the procedures by which the state believes it can best determine how he should be confined.'" *Id.*

"In order to determine whether an inmate possesses a liberty interest, we compare the conditions to which the inmate was exposed in segregation with those he or she could expect to experience as an ordinary incident of prison life . . . . We do not consider the

7

procedures used to confine the inmate in segregation." *Id.* (internal citations and quotation marks omitted)). The Eighth Circuit has consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship." *Phillips*, 320 F.3d at 847 (citation omitted). "[I]n order for [plaintiff] to assert a liberty interest, he must show some difference between his new conditions in segregation and the conditions in the general population which amounts to an atypical and significant hardship." *Id.* The denial of a hearing prior to restraint in administrative segregation is not considered when determining whether a liberty interest was affected. *Id.*

In his first amended complaint, his answers to interrogatories, and his deposition, plaintiff did not allege any facts that would constitute some difference between his new conditions in segregation and the conditions in the general population that amounts to an atypical and significant hardship. Instead, for the first time, in response to the motion for summary judgment, plaintiff's affidavit testimony alleges that he "was denied the use of [his] cane or a wheelchair to move around" while he was in administrative segregation. He contends the denial of the medical equipment caused aggravating serious pain and additional injuries. He states he was issued a knee brace but it was insufficient and attempts to walk inside his cell resulted in falls and additional injuries. Finally, he alleges that the temperature in administrative segregation was significantly colder than in general population and he was denied the use of the jacket he had access to in general population causing additional pain and deterioration of his back and knee ailments.

Plaintiff's affidavit testimony fails to show that defendants Hurley, Butler, Cutt, and/or Allen were responsible for the denial of the medical equipment or his jacket.

8

Instead, he only generally alleges, "Northeast Correctional Center Staff were aware of [his] inability to walk and the increased pain and suffering resulting from [his] placement in segregation." He does not identify these specific defendants as the staff member(s) responsible for the alleged denial of care in administrative segregation. Further, plaintiff's self-serving testimony that was not disclosed in discovery is insufficient to establish a liberty interest or to state a due process claim against defendants Hurley, Butler, Cutt, and Allen.

Because the Court has determined that plaintiff has not shown that a liberty interest was at stake with regard to plaintiff's administrative segregation claim, summary judgment will be granted to defendants as to Count I.

Finally, the Court notes that Count I of the first amended complaint labels plaintiff's claim as due process and cruel and unusual punishment violations with regard to his placement and continuation in administrative segregation. "Generally, the placement of a prisoner in administrative segregation is not considered cruel and unusual punishment." *Thomas v. Lombardi*, 4:13CV00622 AGF, 2014 WL 307335 (E.D. Mo. Jan 28, 2014) (citing *Jones v. Mabry*, 723 F.2d 590, 594–95 (8th Cir. 1983)). In fact, "the Eighth Circuit has held that an inmate sentenced to nine years in administrative segregation fails to implicate the Eighth Amendment." *Id.* (citing *Brown v. Nix*, 33 F.3d 951, 955 (8th Cir. 1994)).

### B. Count II --- failure to provide functional eyeglasses

In Count II of plaintiff's amended complaint, he alleges that defendant Hurley failed to replace his broken eyeglasses with a reasonable substitute thereby wrongfully

9

depriving him of his property and depriving him of the ability to read resulting in missed appointments for necessary medical treatment and denying him the ability to follow written directions regarding his medical treatment. Plaintiff argued that Hurley was deliberately indifferent to his serious medical needs, in violation of plaintiff's Eighth Amendment rights, by failing to provide him with "functional" glasses.

"To show deliberate indifference, [a plaintiff] must prove an objectively serious medical need and that prison officers knew of the need but deliberately disregarded it." *Gordon ex rel. Gordon v. Frank,* 454 F.3d 858, 862 (8th Cir. 2006). "Serious medical need has been defined as a medical need which 'has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Camberos v. Branstad,* 73 F.3d 174, 176 (8th Cir. 1995) (citations and quotation marks omitted). "Courts in this District and others have concluded as a matter of law that the denial of eyeglasses and eye medication or headaches and blurry vision resulting from an incorrect eyeglass prescription are insufficient to establish an objectively serious medical need." *Wagner v. City of Saint Louis Department of Public Safety*, 4:12CV1901 AGF, 2014 WL 3529678, at *8 (E.D. Mo. July 16, 2014) (citing *Dunville v. Morton*, No. 99–1122, 2000 WL 1206653, at*2 (7th Cir. Aug. 22, 2000) (finding no Eighth Amendment violation where a prisoner waited 15 months for an eye examination and had complained about eye pain and headaches during that period because the plaintiff could not establish detriment from delayed treatment of a medical condition never even established to be serious); *Washington v. City of University City*, No. 4:09–CV–0784 HEA, 2012 WL 1134029, at

*4–5 (E.D. Mo. Mar. 31, 2012) (finding no serious medical need where a pretrial detainee alleged that he was denied eyeglasses and eye medication); *Rodriguez v. Wiley*, No. 08CV02505–PAB–CBS, 2010 WL 1348017, at *12 (D. Colo. Feb. 25, 2010) (holding, where the plaintiff prisoner demonstrated that he had been denied prescription eyeglasses over an 18 month period, that he failed to establish a claim of deliberate indifference, in part because he failed to offer evidence that the alleged denial of medical attention "contributed to or intensified his condition") (internal quotation omitted); *Davidson v. Scully*, 155 F.Supp.2d 77, 88–89 (S.D.N.Y. 2001) (concluding that headaches and blurry vision resulting from an incorrect eyeglasses prescription "are not a sufficiently serious condition" to establish a violation of the Eighth Amendment)).

In other cases, courts have held the prisoner had a serious medical need "where the plaintiff has demonstrated that he was unable to see or that he experienced physical degeneration of his eyesight as a result of the allegedly out-of-date prescription eyeglasses." *Wagner*, 2014 WL 3529678, at *9 (citing *Koehl v. Dalsheim,* 85 F.3d 86, 87–88 (2d Cir. 1996) (finding a serious medical condition where the confiscation of plaintiff's glasses caused physical degeneration that rendered plaintiff almost sightless and caused headaches); *Benter v. Peck,* 825 F.Supp. 1411, 1416–17 (S.D. Iowa 1993) (holding that the plaintiff prisoner had a serious medical need where his eyesight, without glasses, fell within the parameters of blindness)).

Although plaintiff pleaded in his complaint that the eyeglasses were not functional and he missed various medical appointments and necessary medical treatment because he could not read the call out sheet, no evidence in support of that contention has been

11

introduced.  It is clear from plaintiff's deposition testimony that his complaint is that the eyeglasses did not fit and were uncomfortable because they were plastic frames.  He testified that he could not read the call out sheet without his personal eyeglasses.  There is no testimony that plaintiff could not read the call out sheet with the state-issued eyeglasses.  There is no testimony that the eyeglasses were not functional, *i.e.* that the prescription in the lenses was incorrect.  Plaintiff simply did not like them, found them to be uncomfortable, and refused to wear them.

There is no evidence in the record before the Court that defendant Hurley failed to provide plaintiff with functioning replacement eyeglasses.  Plaintiff was provided with state issued eyeglasses that he refused to wear because they were not like his personal eyeglasses and they were uncomfortable plastic frames.  This is not a case where the plaintiff has demonstrated that he was unable to see with the state issued eyeglasses or that he experienced any physical degeneration of his eyesight due to incorrect prescription eyeglasses.  This evidence is insufficient to show a serious medical need. *Wagner*, 2014 WL 3529678, at *9.  As a result, there is no evidence that defendant Hurley was deliberately indifferent to a serious medical by providing plaintiff with state issued eyeglasses that plaintiff found to be uncomfortable.  This Court will grant summary judgment in favor of defendant Hurley on Count II of the first amended complaint.  For the same reasons, plaintiff's request for injunctive relief will be denied.

### C. Count III – interference with legal mail

Plaintiff alleges that on at least 15 occasions between August 29, 2012 and February 19, 2013 staff refused to deliver mail that was addressed to his attorney and

clearly marked legal mail. He directs this allegation against defendants Kiel and Grote, who worked in the NECC mailroom. As to defendant Hurley, plaintiff states that he and his attorney advised Warden Hurley of the mail situation but that Hurley refused to take corrective action. Plaintiff further alleges that the policies, rules, regulations, practices, customs, and on instructions on how to handle inmate mail, including legal mail, have denied him his right to send and receive mail in violation of the First Amendment.

Defendants Kiel and Grote are no longer employees at NECC. Additionally, plaintiff's is no longer incarcerated at NECC. As a result, the official capacity claims for injunctive relief against the defendants are moot.

Even if not mooted, defendant's claim that the policy regarding outgoing mail violates his First Amendment right to use the mail would fail to survive summary judgment. Defendants Kiel and Grote are former mailroom employees at NECC, and they admit they returned mail to plaintiff on numerous occasions between June 2012 and the filing of this lawsuit in November 2013 because the mail was missing part of the return address or lacked sufficient postage.[3] The Department of Corrections (DOC) policy regarding outgoing mail requires an inmate to include a return address on the upper left hand corner of the envelope containing the offender's complete commitment or legal name, department number, housing unit, institution, and institution address. The

---

[3] Plaintiff's attorney, on behalf of plaintiff, stipulated that there is no complaint with regard to the policy about returning mail for not having proper postage. Instead, plaintiff contends that legal mail was returned to him for insufficient postage when, in fact, it had sufficient postage. Plaintiff does not claim that this mail was not ultimately sent, however, or that this reflects anything other than a benign mistake by mailroom employees.

policy at NECC also requires the inmate's wing and cell number to be in the return address. If the required information is not included in the return address, both of those policies require that the mail be returned to the inmate. These policies apply to both legal mail and non-legal mail.

Plaintiff admitted in his deposition that he has regularly failed to include the housing unit, wing, and cell number in the return address for his outgoing mail because he does not believe there is a policy requiring that information to be in the return address. He testified that it had not been required at other institutions. In his interrogatory responses, plaintiff conceded that mail returned to him by defendants Kiel and Grote was missing the housing unit, wing, and cell number. The policies at issue in this case impose only minimal restrictions on plaintiff's ability to send mail. The mail at issue was returned to plaintiff with a form explaining why it was rejected, giving him the ability to add the missing information. Plaintiff merely had to comply with the policy. Plaintiff admitted that he complied with the policy sometimes but not others, particularly as to his legal mail. He testified in his deposition that he did not think it should apply to legal mail because it was special. The policy was not difficult to comply with, it would not cause a delay in the outgoing mail, and did not interfere with plaintiff's ability to send mail, including legal mail.

Regardless, plaintiff claims the policy violated his First Amendment rights. The United States Supreme Court has stated that a "prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." In *Turner v. Safley*,

482 U.S. 78, 89 (1987), the Supreme Court stated that prison regulations pass constitutional muster if they are "reasonably related to legitimate penological interests." Here the regulations are clearly reasonably related to legitimate penological interests, which in this case allow for easier administration of prison mail and preventing inmates from using mis-addressed mail to illicitly communicate with other prisoners.

Summary judgment will be granted to the defendants.

## V. Conclusion

The defendants' motion for summary judgment will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment (#78) is **GRANTED**.

**IT IS FURTHER HEREBY ORDERED** that judgment is entered in favor of defendants and against plaintiff. A separate judgment shall accompany this Memorandum and Order.

Dated this __18th__ day of August, 2016.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE